# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-158 (SRN/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM, OPINION, AND ORDER** |
| Traigh Sean Tillman, | |
| Defendant. | |

Thomas Calhoun-Lopez and David M. Classen, Assistant United States Attorneys, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, and Ben Tonkin, Trial Attorney, United States Department of Justice, 1301 New York Avenue Northwest, Washington, D.C. 20005, for Plaintiff.

Thomas H Shiah, Law Offices of Thomas H. Shiah, Ltd. 331 Second Avenue South Suite 705, Minneapolis, MN 55401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

Before the Court are seven Motions in Limine filed by the Government [Doc. Nos. 61, 62, 67] and four Motions in Limine filed by Defendant Traigh Sean Tillman [Doc. Nos. 64, 66, 68]. A pre-trial conference was held in this matter on February 7, 2024, at which the Court ruled on several of the parties' motions and deferred on others [Doc. No. 72]. The Court now rules on three motions in limine: (1) the Government's Seventh Motion in Limine, to admit Facebook evidence consisting of messages and posts by the Defendant related to firearms and ammunition; (2) the Defendant's Second Motion in Limine, to preclude any evidence of the death of the individual referenced in the Indictment; and (3) the Defendant's Fourth Motion in Limine, to prohibit the Government from offering

evidence or eliciting testimony about DNA testing and analysis conducted in this case.  For the reasons set forth below, the Court grants these pending Motions.

## I.    BACKGROUND

Mr. Tillman is charged by Indictment with one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(8) ("Indictment") [Doc. No. 1]. The Indictment alleges that Mr. Tillman was convicted of two crimes in 2013—First Degree Aggravated Robbery and Fifth Degree Drug Possession—each of which was punishable by a term of imprisonment exceeding one year. (Indictment at 2.) The Indictment further alleges that on August 7, 2022, knowing that he had been convicted of at least one crime punishable by a term of imprisonment exceeding one year, Mr. Tillman knowingly possessed, in and affecting interstate and foreign commerce, a 9mm round of ammunition. *(Id.)*  Mr. Tillman is charged based on his alleged possession of a firearm and ammunition during an incident in the early-morning hours of August 7, 2022, during which an individual referred to by the Government as "MAO" was involved in an altercation with the Defendant.  (Gov. Trial Br. [Doc. No. 62] at 2-5.)  The Government alleges that during this altercation, Mr. Tillman likely shot himself in the leg.  (*Id*.)  Subsequent to this altercation, MAO was shot repeatedly and killed; the Government does not allege that Mr. Tillman was involved in MAO's killing.  (*Id*.)

## II.   DISCUSSION

### A.   Legal Standards

A district court is accorded discretion in its evidentiary rulings. *United States v. Battle*, 774 F.3d 504, 512 (8th Cir. 2014) (citation omitted). In this case, Defendant seeks to exclude several pieces of evidence as irrelevant and prejudicial.

Pursuant to Federal Rule of Evidence ("FRE") 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[E]vidence which is vague and speculative is not competent proof and should not be admitted into evidence." *United States v. Maestas*, 554 F.2d 834, 837 n.2 (8th Cir. 1977)). However, limiting instructions can diminish the danger of unfair prejudice arising from the admission of evidence. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006).

FRE 404(b) prohibits the admission of "[e]vidence of any other crime, wrong, or act ... to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FRE 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FRE 404(b)(2). To be admissible, such evidence must "(1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs" the probative value of the

evidence. *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006) (internal quotation marks omitted).

**B.     Motion To Admit Facebook Evidence**

The Government moves to admit certain Facebook messages from an account associated with the Defendant, consisting of messages in which Defendant allegedly: "(1) asked another individual to buy him a gun on March 15, 2020; (2) told another individual that a gun the individual had was 'almost as nice as [his] glock' on June 4, 2020; (3) referred to bringing a gun on June 15, 2020; (4) referred to bringing his gun on August 6, 2020; and (5) discussed whether another individual would buy a gun for others (and suggesting the individual report the gun as stolen to prevent it from being traced back to the purchase) on March 23, 2021." (Gov. Reply Br. [Doc. No. 67] at 3.)  The Government also seeks to admit photographs of: (1) Tillman holding a magazine of ammunition next to a woman holding a firearm, posted on April 10, 2020; and (2) a pistol with an extended magazine, posted on June 7, 2020.  (*Id*.)

The Government argues that this evidence is either admissible as intrinsic to the crimes charged, or admissible under FRE 404(b), as the evidence has the non-propensity purpose of showing Defendant's knowledge of his unlawful possession of firearms.  (Gov. Trial Br. at 17-23; Gov. Supp. Br. [Doc. No. 75] at 4-11.)  Defendant moves to exclude this evidence under FRE 403 as neither relevant nor probative of the issues for trial.  (Def's Reply Br. [Doc. No. 66] at 2-4.)  Defendant argues that the Facebook messages and posts are too old to be probative, lack a non-propensity purpose supported by a case-specific

analysis, and are significantly more prejudicial than probative. (*Id.*; (Def's Supp. Br. [Doc. No. 76] at 1-7.)

At the Court's February 7, 2024 hearing, the Court held that none of this evidence is intrinsic to the crimes charged, and requested supplemental briefing concerning whether the evidence could be admitted under FRE 404(b).[1] The Court also requested briefing on to what extent a limiting instruction could resolve any issues of prejudice, and that the parties provide draft instructions.

### 1. Relevance

The Government identifies Defendant's motive for possessing a firearm as a non-propensity purpose for admitting the Facebook evidence, arguing that it demonstrates Defendant's motive for possessing a gun and his state of mind. (Gov. Trial Br. at 20-21.) The Government also argues that the Facebook evidence shows Defendant's "knowledge of how to acquire a firearm despite his prohibited status." (Gov. Reply Br. at 4.) Finally, the Government argues that Defendant's prior possession of firearms is admissible to prove

---

[1] The Government's supplemental briefing reiterated the argument that the Facebook evidence is intrinsic to the charged crime. As the Court expressed at the February 7, 2024 hearing (PTC Trans. 11:5-12), the Court disagrees. Non-conviction evidence that Defendant possessed or sought to possess a firearm from at latest approximately 17 months prior to the charged crime is far too distant to be part of the "immediate context of the crime charged." *United States v. Wright*, 993 F.3d 1054, 1061–62 (8th Cir. 2021). The central cases the Government cites—*Wright*, 993 F.3d at 1063, 1066; and *United States v. Cook*, 842 F.3d 597, 601 (8th Cir. 2016)—concern evidence from one month and three days prior to the charged crime, respectively. While the Eighth Circuit upheld the admissibility of older evidence in *United States v. Rembert*, 851 F.3d 836, 839 (8th Cir. 2017), it notably did so as 404(b) evidence, not as intrinsic evidence. The Court's ruling at the February 7, 2024 hearing stands.

that "the defendant had the requisite knowledge and intent to possess a firearm." (Gov. Supp. Br. at 9 (quoting *United States v. Adams*, 783 F.3d 1145, 1149 (8th Cir. 2015).)

In the Eighth Circuit, prior possession of firearms is generally relevant in proving the element of "knowing possession" for felon-in-possession cases. *See United States v. Harrison*, 70 F.4th 1094, 1098 (8th Cir. 2023); *Adams*, 783 F.3d at 1149 (8th Cir. 2015); *United States v. Halk*, 634 F.3d 482, 487 (8th Cir. 2011); *Walker*, 470 F.3d at 1274 ("[K]nowing possession of a firearm [is] an element of 18 U.S.C. § 922(g)(1)"). A "not-guilty plea in a felon-in-possession case makes past firearm convictions relevant to show the material issues of [the defendant's] knowledge of the presence of the firearm and his intent to possess it[.]" *United States v. Drew*, 9 F.4th 718, 723 (8th Cir. 2021) (cleaned up).

However, when seeking to admit prior bad acts for a non-propensity purpose, the Government must "articulate the relationship between the evidence and a material issue in the case" by presenting a case-specific analysis of the evidence in question. *See United States v. Jackson*, 856 F.3d 1187, 1192 (8th Cir. 2017) (citing *United States v. Cotton*, 823 F.3d 430, 432 (8th Cir. 2016).) Relevance for that purpose must be actually demonstrated rather than simply alleged. *Drew*, 9 F.4th at 726-28 & n.6. (Kelly, J., concurring) (arguing that the Government's invocation of Defendant's six prior felon-in-possession convictions were intended to cause the jury to infer that Defendant was "once a gun possessor, always a gun possessor.")

The Eighth Circuit has admitted social media evidence similar to that which the Government seeks to admit here. In *Wright*, 993 F.3d at 1063, the Court upheld the

admission of Facebook conversations in which Defendant offered to sell a gun matching a robbery weapon one month before the robbery, holding that this evidence was "highly probative" of a co-defendant's possession of said gun and showed Defendant's knowledge. Similarly, the Court upheld the admission of Facebook conversations where the defendant indicated his acquaintance with others involved in the robbery in the period preceding the robbery. *Id.* at 1063-64. In *Rembert*, 851 F.3d at 839, the Court upheld the admission of a January 2013 Facebook video in which the defendant held a gun, as the defendant's way of holding a gun was distinctive and fingerprint evidence collected from the gun found in the defendant's vehicle in June 2015 matched this distinctive pattern. In *United States v. Payne–Owens*, 845 F.3d 868, 871-73 (8th Cir. 2017), the Court upheld the admission of Facebook videos, including videos where the defendant held a gun and others where he used a gang-related hand gesture and slang words, as this evidence provided a motive for the defendant's unlawful possession of a firearm when the defendant argued that the firearm and ammunition were not real.

Defendant's communications from March 15, 2020 and March 23, 2021 are relevant to a material issue at trial—Defendant's possession of a firearm—for the non-propensity purpose of Defendant's intent to acquire a firearm despite his status as a prohibited person, and his knowledge of how to do so. In these conversations, Defendant seeks to acquire a firearm through purchasing one himself (*Id*. at 6 (stating "for sale? Or nah?")) or through having another person purchase one on his behalf (*Id*. at 2-4.) While this may be less convincing evidence of possession than the defendant's attempted sale of a firearm in *Wright*, 993 F.3d at 1063, it is certainly relevant for a non-propensity purpose.

The non-propensity relevance of the remaining Facebook evidence is a closer question. On balance though, the Eighth Circuit's position that knowing possession is an element of the charged crime and therefore evidence of Defendant's prior unlawful possession speaks to Defendant's intent, persuades the Court that this evidence has a sufficient non-propensity purpose and is admissible so long as it is accompanied by a limiting instruction. Accordingly, the Court finds that this evidence should not be excluded on this basis.

### 2. Timeliness

The Facebook evidence that the Government seeks to admit varies in temporal distance from the August 7, 2022 incident, from approximately 29 months prior to the incident (March 15, 2020) to approximately 17 months prior to the incident (March 23, 2021).

To determine if a crime or other bad act is too remote in time to be admissible under FRE 404(b), the Eighth Circuit applies "a reasonableness standard, evaluating the facts and circumstances of each case." *Walker*, 470 F.3d at 1275 (8th Cir. 2006) (citing *United States v. Adams*, 401 F.3d 886, 894 (8th Cir. 2005)). "Whether [a] conviction is close in time to the charged offense is 'one factor indicating the relevancy of the evidence, but there is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent.'" *Walker*, 470 F.3d at 1275 (citing *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995)). As such, whether evidence of something other than a prior conviction is too remote in time is a context-specific question.

In the Eighth Circuit, courts have previously admitted evidence of this vintage. *See Rembert*, 851 F.3d at 839 (holding that a video posted on Facebook approximately two and a half years prior to the charged offense was not "overly remote in time[.]"); *United States v. Nyah*, 35 F.4th 1100, 1108-09 (8th Cir. 2022) (admitting images taken from music videos recorded in 2015 and 2016 showing Defendant holding a gun to prove charged possession in December 2019, as they were taken "within five years" of the charged possession). Courts in other jurisdictions have done the same. *See United States v. Lozano*, 623 F.3d 1055, 1059-60 (9th Cir. 2010) (evidence of defendant's prior possession and sale of drugs was "not too remote in time because the search [that previously discovered marijuana] occurred merely eight months before the charged offense and the marijuana grow pictures dated merely three years before the offense."); *United States v. Gatson*, CASE NO. 1:19-CR-38, 2020 WL 264977 at *4 (E.D. Tex. Jan. 17, 2020) (holding that photos from seven months and 16 months prior to the charged offense were not too remote in time).

Within the Eighth Circuit, the closest case to the evidence at issue is *Rembert*.  As all of the Facebook communications and photos were sent or posted within two and a half years of August 7, 2022, the Court finds that they should not be excluded as untimely.

### 3.  Supported By Sufficient Evidence

Defendant does not make any argument as to why the prior acts in question are not supported by sufficient evidence for a jury to find that Defendant committed these other acts.  As the Government has authenticated Defendant's Facebook account as belonging to

Defendant, and Defendant does not dispute that the Facebook profile in question belongs to him, this prong supports admission for all of the disputed Facebook evidence.

### 4. Prejudice

"Damaging evidence is always prejudicial; the question is whether the evidence is unfairly prejudicial." *United States v. Gant*, 721 F.3d 505, 510 (8th Cir. 2013).  There is "no mechanical solution [to] guide the district court in weighing probative value against undue prejudice in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under [FRE 403.]").  *Drew*, 9 F.4th at 724 (citing FRE 404(b) advisory committee note).  Moreover, "a proper limiting instruction serves as a protection against unfair prejudice." *United States v. Cockerham*, 417 F.3d 919, 921 (8th Cir. 2005).  The Court tends to find unfair prejudice outweighing probative value only where the Government's evidence is needlessly cumulative or the raised facts are "so inflammatory on [their] face as to divert the jury's attention from the material issues in the trial[.]" *Adams*, 401 F.3d at 900.

*United States v. Lomas*, 826 F.3d 1097 (8th Cir. 2016) is instructive.  There, the defendant was convicted of bank robbery.  The Court upheld the admission of testimony that the defendant discarded a firearm several weeks before the robbery, as it was relevant on several grounds and not unfairly prejudicial. *Id.* at 1103.  The Court held because there was no testimony that the defendant "fired, brandished, or used the firearm in any manner that was illegal" and "the district court admonished the jury that the testimony should not be considered as evidence that [defendant's] possession of the firearm was illegal or that he was connected in any way to [a different 'shots fired' investigation,]" any potentially

unfair prejudice was mitigated.  *Id*. at 1104.  Similarly, in *Rembert*, the Court upheld admission of a Facebook video entitled "Real thugz 'bout dat, get at me. Bang, bang!!!!!!!!!!!!" as not unfairly prejudicial compared to its probative value for proving the defendant's possession of a firearm. 851 F.3d at 839.  The Court held that "[t]he [foul language] used on the video are to a rap song, not his own, and the caption does not otherwise associate Rembert with any specific category of behavior." *Id*.

None of the evidence should be excluded as substantially more prejudicial than probative.  While conversations concerning firearms or photos of Defendant holding ammunition and of a loaded handgun may be prejudicial, they are not unfairly so, as the potential prejudice does not substantially outweigh their probative value for Defendant's possession of ammunition. *See Wright*, 993 F.3d at 1062-64 (holding that multiple photos where the defendant held a firearm similar to that used in a robbery and large amounts of cash was not substantially more prejudicial than probative). None of this evidence is particularly inflammatory, as Defendant does not make statements concerning other crimes, use inflammatory language, or express affiliation with organized criminal activity not at issue in this case.  Moreover, the Government's evidence is not cumulative.

On the whole, this evidence does not meet the high bar of being significantly more prejudicial than probative, particularly if cabined by a limiting instruction.  Accordingly, the Court finds that the evidence should not be excluded on this basis.

\*     \*     \*

The Court finds that the Facebook evidence raised by the Government is admissible under FRE 404(b), and will be admitted with a limiting instruction, limiting the use of the

evidence to prove Defendant's knowing unlawful possession and intent to possess firearms. As such, the Court grants the Government's Seventh Motion in Limine. The Court will rule on the language of the relevant limiting instruction during the parties' morning conference on February 26, 2024.

### C.   Evidence Of Death Of Individual Referenced In The Indictment

The Government does not oppose Defendant's motion to exclude evidence that MAO died shortly after his altercation with the Defendant. However, the Government still intends to offer evidence that Defendant and others shot MAO on August 7, 2022. This evidence includes an approximately 38-minute-long surveillance video obtained from a church across from the site of the August 7 incident, which the Government seeks to play until 32 minutes and 25 seconds ("32:25") and depicts MAO collapsing after being shot repeatedly during this time, as well as photos of numerous shell casings and property damaged by gunfire.

At the Court's February 7, 2024 hearing, Defendant argued that the evidence that MAO was repeatedly shot will necessarily lead the jury to the conclusion that he was killed, and as Defendant is not accused of killing MAO, admitting such evidence would be substantially more prejudicial than probative. (PTC Trans. 27:2-28:24.) Defendant moves to prevent the Government from playing portions of the video that imply that MAO was killed, as well as evidence of shooting. The Court requested supplemental briefing, although neither party addressed this issue in its supplemental briefing.

The Court analyzes the admissibility of this evidence under FRE 403. This rule "prohibits evidence that is unfairly prejudicial, not any evidence detrimental to a

defendant's case." *United States v. Fechner*, 952 F.3d 954, 958 (8th Cir. 2020).  Evidence of conduct by another party for which the defendant is not charged can be admissible where it is probative of some aspect of the crime.  *United States v. Jackson*, 662 Fed.Appx. 310, 317 (5th Cir. 2016) (holding that video evidence of the defendant handing a gun to a third party—who then shot someone that survived the shooting—was not excluded by FRE 403 for a felon-in-possession charge, as it was highly probative of defendant's identity and not unfairly prejudicial).

However, the probative value of an item of evidence can be affected by comparison to evidentiary alternatives. *Old Chief v. United States*, 519 U.S. 172, 184-85 (1997). Evidence of a shooting, such as photos of a vehicle damaged by gunfire, is highly prejudicial.  *See United States v. Gibbs*, 797 F.3d 416, 423-25 (6th Cir. 2015) (excluding photos and testimony concerning an uncharged drive-by shooting on the highway as substantially more prejudicial than probative).  Graphic depictions of an individual's murder are also highly prejudicial.  *See United States v. Bailey*, 840 F.3d 99, 121-22 (3d Cir. 2016) (excluding video of "cold-blooded murder" where there was already evidence in the record of the fact of the murder, as "it is difficult to understand how the emotional impact of this video would not unfairly prejudice the jury against members of the [charged drug conspiracy].")

Exhibits showing shell casings near MAO's car are probative of the fact that a shooting took place next to the vehicle as depicted in the video.  Similarly, exhibits showing shell casings not found near MAO's car but found at the scene are relevant and probative of the fact that shooting occurred more broadly at the location, which helps contextualize

the two contemporaneous 911 calls—admitted without objection by Defendant—reporting a large number of gunshots. Both of these facts also provide context and a possible alternative explanation to the Government's theory for Defendant's bullet wound.

Conversely, the exhibits showing bullet damage to MAO's car and the surveillance video beyond 31:45 have little additional probative value of Defendant's possession of a firearm or ammunition. In the subsequent forty-five seconds of the video, the individual identified as Defendant limps away from MAO towards an electrical pole and has no further contact with him. Defendant has no contemporaneous interaction with any of the individuals firing weapons at MAO. The only probative value of the contested portion of the video is to further explain where the depicted shell casings—retrieved from the site of the shooting but not allegedly linked to Defendant—came from.[2] Similarly, the exhibits showing bullet damage only go to prove that there was significant gunfire generally. The probative value of both of these pieces of evidence is further allayed by their duplicative nature, as the 911 calls and the other photos of the crime scene establish the same facts.

At the same time, these photos and the contested portion of the video are highly prejudicial. Beginning at approximately 31:45 of the video, individuals begin firing repeatedly at MAO. At approximately 31:50, MAO stumbles and falls in the street while under fire, although he stands up again. At approximately 32:00, MAO is hit multiple

---

[2] If the DNA evidence concerning the blood found on the ground near the electrical pole was admissible, the video would have some additional probative value to show that the individual identified as Defendant was near the pole at some point after the altercation. However, as discussed *infra*, the DNA evidence is not admissible. Therefore, there is no probative value associated with the Defendant's position vis-à-vis the pole in particular, rather than his presence at the site of the incident in general.

times.  He subsequently collapses and does not stand up again, instead writhing on the ground.  All told, the footage is graphic and strongly suggests that MAO is killed by the barrage of gunfire.  While the photos showing bullet damage to the car are somewhat less prejudicial than the video of MAO's death, they are still highly prejudicial.  *Gibbs*, 797 F.3d at 425 ("[T]he photographs depicting a bullet-riddled vehicle and the story conveying how the car came to be destroyed can only enflame the jury's passions against the Defendant.")

The prejudicial effect of this evidence therefore substantially outweighs its probative value.  Unlike in *Jackson*, 662 Fed. Appx. at 317, *Gibbs*, 797 F.3d at 423, or *Bailey*, 840 F.3d at 121-22, where the defendants were either accused of direct involvement in the shooting for which evidence was offered or of a broader conspiracy of which the shooting was part, Defendant is not accused of any involvement in the shooting of MAO.  While the shooting of MAO may have been somehow related to Defendant's altercation with MAO, the Government did not charge Defendant with any crime relating to the shooting, only the unlawful possession of ammunition.  The prejudice resulting from graphically linking Defendant to an uncharged murder is thus profoundly unfair to Defendant.

Accordingly, the Court finds that any segment of the video after 31:45, as well as Government exhibits depicting damage to MAO's car, should be excluded under FRE 403.  As such, the Court grants Defendant's second motion in limine.  The Court will determine the applicability of this ruling to specific photo exhibits during the parties' morning conference on February 26, 2024.

### D.     DNA Evidence

The Government seeks to admit—and Defendant moves to exclude—DNA evidence allegedly linking samples of blood collected from the scene of the August 7 incident by the Bureau of Criminal Apprehension (the "BCA") with samples of blood taken from Defendant's clothing worn on August 7, 2022.  The BCA undertook DNA profiling of blood found at the scene of the incident near an electrical pole (Item 1) with clothing items taken from the Defendant that evening (Items 5, 6, and 7).  The BCA report describes Items 1, 5A, 5B, 6A, 7A, and 7B as having a single-source male DNA profile that did not match MAO's DNA profile.  Item 6B (taken from between the button and belt loop of the Defendant's shorts) showed a mixture of two or more individuals' DNA profiles, with a major profile matching the source of the other items tested.  MAO's DNA profile did not match the major profile in Item 6B.  The Government does not intend to introduce any evidence demonstrating a match between Defendant and the single-source male DNA profile found on Items 1, 5A, 5B, 6A, 7A, and 7B.

At the February 7, 2024 hearing, the Court expressed concern over the admissibility of this evidence, and requested supplemental briefing.  In its supplemental briefing, the Government argues that evidence linking blood found on Defendant's clothing and blood found at the crime scene was probative of whether Defendant was the man captured on video at the scene allegedly shooting at MAO, thus possessing the ammunition with which he is charged.  (Gov. Supp. Br. at 15.)  The Government argues that "testimony is akin to evidence that a crime scene was muddy, and mud was found on a defendant's shoes, because the presence of the same mud at the crime scene and on the defendant's shoes is

16

circumstantial evidence that the defendant was present at the crime scene." (*Id.* at 16.)  The Government also states that it intends to elicit the fact that no DNA sample was taken from Defendant, that the jury will hear only that blood from the crime scene and blood on Defendant's clothes matches with no evidence that the samples match Defendant, and proposes a limiting instruction to prevent jury confusion.  (*Id.* at 17-18.)

Defendant argues that the DNA evidence should be excluded as it is likely to confuse and prejudice the jury, that even use of the phrase "match" to describe the comparison between the two instances of single-source DNA is inexact and troubling, and that it is telling that the Government has been unable to present any supportive case law. (Def's Supp. Br. at 7-8.)

Whether to admit the DNA evidence requires an FRE 403 analysis to determine what the evidence's probative value is, and then to weigh it against the mix of dangers presented by the rule.  Here, the probative value of the DNA evidence is that it helps establish that Defendant was at the scene of the incident on August 7, 2022.  While this is important to the Government's narrative of the case, it does not directly help establish that Defendant possessed ammunition on the day in question.  As such, the DNA evidence has limited probative value.

Turning to the other side of the FRE 403 equation, both state and federal courts have discussed the dangers that DNA evidence can pose under Rule 403.  DNA evidence has the potential to confuse and mislead jurors due to its scientific nature. *See United States v. Bonds*, 12 F.3d 540, 567-68 (6th Cir. 1993) ("The aura of reliability surrounding DNA evidence does present the prospect of a decision based on the perceived infallibility of such

evidence ....”); *People v. Wright*, 37 N.E.3d 1127, 1137 (N.Y. 2015) (“The persuasiveness of DNA evidence is so great that as one commentator noted, ‘when DNA evidence is introduced against an accused at trial, the prosecutor's case can take on an aura of invincibility.’”); *Whack v. State*, A.3d 186, 188 (Md. 2013) (“jurors place a great deal of trust in the accuracy and reliability of DNA evidence. But this evidence has the potential to be highly technical and confusing in a way that could unduly affect the outcome of a trial.”)  For this reason, “testimony regarding DNA evidence is admissible only if the court determines the expert derived the testimony from use of ‘a reliable methodology or principle in the particular case.’” *United States v. Richardson*, 537 F.3d 951, 960 (8th Cir. 2008) (internal citations omitted).  DNA evidence may also be excluded as duplicative and a waste of the jury’s time. *People v. Valdez*, Case No. 18-cr-00608-JD-1, 2019 WL 539074 at *3-4 (N.D. Cal. Feb. 11, 2019) (excluding DNA evidence as it only showed that the defendant was at a specific location, which could be proved with other evidence).

The Government’s proposed testimony is dangerously confusing and likely to mislead a jury.  As the Government admits, there is no DNA “match” to Defendant, whose DNA was not tested, nor a match to any specific individual.  No expert witness explaining the relevance of the DNA would testify that such a match was found.  Yet, the obvious and desired implication is that there is a match, and the blood on the ground and Defendant’s clothing belongs to the Defendant. The Government does not deny this, stating that:

> The blood evidence tends to prove that the person shown on the video is the same person (that is, the defendant) who sought treatment for a gunshot wound shortly after the shooting. The blood evidence establishes the defendant’s possession of ammunition when he was firing the gun, including

inadvertently shooting himself in the leg, leaving his blood at the crime scene.

(Gov. Supp. Br. at 17-18.)  In admitting this evidence, the Court would be asking the jury to reach a finding through inference that no expert witness would be willing to make based on the science.

The admission of this evidence is also unsupported by case law.  Despite the Court's request, the Government has provided no precedent for admitting DNA evidence implying that a defendant was present without evidence of a "match" between the DNA evidence and the defendant's DNA. In its own review, the Court has not located a single case in which DNA evidence—single-source or a mix of sources—was admitted without being "matched" to the defendant or another person.

While a limiting instruction could reduce possible jury confusion and prejudice, there is still significant potential for this evidence to confuse and mislead the jury given the complexity of DNA evidence and the scientific aura surrounding it.  Moreover, the Court will need to commit significant time to explaining the DNA evidence, as it requires expert testimony about the science as well as cross-examination.  Particularly as Defendant's presence in the area of the August 7 incident can be established by other means, the cumulative effect of prejudice, confusion, and wasted time significantly outweigh the minimal probative value of the DNA evidence.  Accordingly, the Court finds that the DNA evidence should be excluded, and grants Defendant's Fourth Motion in Limine.

**III.   ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1) Government's Seventh Motion in Limine [Doc. No. 61] is **GRANTED;**

2) Defendant's Second Motion in Limine [Doc. No. 64] is **GRANTED**; and

3) Defendant's Fourth Motion in Limine [Doc. No. 68] is **GRANTED**.


Dated: February 22, 2024                              /s/ Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge